

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00099-CV

IN THE INTEREST OF B.B., A CHILD

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 19C1698-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

In a suit brought by the Texas Department of Family and Protective Services (the Department), the trial court terminated the parental rights of A.B., the father of B.B.,[1] on three grounds specified in the Texas Family Code—Section 161.001(b)(1), subsections (D), (E), and (O)—and a finding that termination was in B.B.'s best interest.[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (Supp.). On appeal, A.B. contends that the trial court erred in terminating his parental rights because it (1) failed to allow him visitation with B.B. and (2) failed to place B.B. with a family member as he had requested. For the reasons below, we affirm the judgment of the trial court.

## I. Background

Terita Williamson, an investigator for the Department, became involved in this case after ten-year-old B.B. made an outcry of physical abuse against A.B. The Department filed a petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship and requested emergency removal. Williamson testified that the Department had trouble locating A.B. because "he was telling [her] he was at different places and the stories kept changing." As a result, the Department issued a child safety check alert list (CSCAL), notifying law enforcement that B.B. could not be found. A.B. and B.B. were located on November 5, 2019, at which time the Department took possession of B.B.

---

[1]To protect the confidentiality of the child involved, we refer to the child and the adults by initials. *See* TEX. R. APP. P. 9.8(b)(C)(2).

[2]B.B.'s mother is deceased.

Williamson testified that A.B. and B.B. had been living in a truck. According to Williamson, at the time of her removal, "[B.B.] smelled like urine and cat. Her hair wasn't groomed. She had on a coat with flip-flops." B.B. also had a cheeseburger in her pocket "because she wanted to save it for later to make sure she had something to eat. Her clothes were really, really filthy . . . ." When B.B. learned that she was not going to live with A.B., "[s]he was happy." "She grabbed her things automatically and got into the [Department's] vehicle." Williamson explained, "[B.B.] stated that she did not want to go back. We even asked about family members, and she stated that she didn't want to go there either because she was afraid of getting hit again by her father." Williamson stated that B.B. showed signs of physical abuse and, during an interview at the Children's Advocacy Center (CAC.), B.B. stated that A.B. had, on two occasions, hit her across the face with a belt.

Schetovia Curry, a Department conservatorship worker, also became involved with B.B.'s case in November 2019. Eventually, Curry met with A.B., informing him of the services he would be offered through the Department and explaining the steps he would be required to take in order to affect the return of B.B.[3] According to Curry, A.B. indicated that he would work services that the Department offered. A.B. completed his parenting class in March 2020, completed a psychosocial evaluation in May 2020, and completed a psychological evaluation in August 2020. A.B. went to counseling in "different months, and some months he [didn't] report[]." Also, A.B. was ordered to take classes for "domestic violence/anger management[,]" yet, he failed to comply with the order. A.B. told Curry that he was "staying here and there, that

---

[3]April Hill, a conservatorship supervisor for the Department, testified that the Department's services were not suspended due to the COVID-19 outbreak.

3

he was basically homeless, but he said he was working on getting his own place." He did not report that he had obtained employment, which was also required by the trial court's order. A.B. was also ordered to refrain from using illegal drugs and to submit to drug testing twice a month; yet, A.B. only submitted to testing on four occasions, and he tested positive on each of those tests. A.B. claimed, however, that he had not used drugs since November of last year. According to A.B., his tests had been positive "because of the high concentration of THC that [he] consumed on a daily basis."

Curry opined that it was in B.B.'s best interest for the trial court to terminate A.B.'s parental rights. Moreover, Curry said that, even if A.B. had worked all the services in accordance with the trial court's order, she would have continued to maintain that A.B.'s parental rights should be terminated. Curry explained, "Because right now, my job is to make sure that it's what the child wants, and she is adamant about not going back." After hearing from additional witnesses, the trial court terminated A.B.'s parental rights to B.B.

During the pendency of the case, A.B. asked the trial court for visitation rights on multiple occasions, but those requests were denied.[4] Instead, the trial court entered an order

---

[4]On November 12, 2019, the trial court entered an order suspending visitation, finding that it would not be in B.B.'s best interest for A.B. to have visitation rights. The trial court stated that it would consider future visitation at the next hearing. On November 15, 2019, the trial court entered a temporary order following an adversary hearing, which stated, "No visitation until further order of the court." On December 19, 2019, the trial court entered a status hearing order that again denied A.B.'s request for visitation, stating, "No visitation. [B.B] to begin trauma counseling. . . ." On March 11, 2020, another Court Appointed Special Advocate (CASA) report was filed with the trial court, recommending that A.B. not be granted visitation rights "until progress has been made with his service plan and a recommendation by [B.B]'s counselor is given." Three days later, the trial court entered its initial permanency hearing order before final order, which stated that the court's prior order relating to the issue of visitation was to be "continue[d] in full force and effect." The same language was contained in the trial court's permanency hearing order before final order, which was issued on July 27, 2020. On December 17, 2020, the trial court entered its order terminating A.B.'s parental rights.

forbidding A.B. to have contact with B.B.  In addition, A.B. asked that B.B. be placed with B.B.'s aunt, A.P.[5]  A home study was conducted, after which it was determined that A.P.'s home would not be a suitable placement for B.B.[6]  This appeal followed.

## II.     Discussion

A.B. does not maintain that there was insufficient evidence for the trial court to terminate his parental rights or that there was insufficient evidence to support the trial court's finding that termination was in B.B.'s best interest.  Instead, A.B. contends that the trial court erred when it terminated his parental rights to B.B. (1) without giving him visitation rights "from the commencement of the case through the termination hearing,[7] and (2) because the trial court refused to place B.B. with A.B.'s aunt.

"[A] temporary order is superseded by entry of a final order of termination, rendering moot any complaint about the temporary order." *In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.—San Antonio 2016, no pet.) (complaints regarding aggravated circumstances finding in temporary orders moot); *In re J.F.G., III*, 500 S.W.3d 554, 559 (Tex. App.—Texarkana 2016, no pet.) (citing *In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at *5 n.5 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.) (complaints about child's removal not proper in context of appeal from final order terminating parental rights); *In re C.R.J.*, No. 06-13-00053-

---

[5]A CASA report to the court shows that A.B. had also suggested two additional placement possibilities, including his step-mother and her fiancé; however, the fiancé was a registered sex offender.

[6]B.B. was "doing well" in her current placement home, which, according to Curry, was "a potential forever home." Curry also explained that B.B. told her that she did not want to be placed with A.B. or any of his family members.

[7]A.B. also complains that the trial court's visitation orders were inadequate because the court did not make the necessary findings and did not include the steps that A.B. would be required to take in order to effectuate the return of B.B.  Because visitation is a moot issue, we decline to address this point of error any further.

CV, 2014 WL 199209, at *2 (Tex. App.—Texarkana Jan. 17, 2014, no pet.) (mem. op.) (complaints regarding temporary hearings or temporary orders rendered moot when final termination order was entered). Moreover, "[a] temporary order[] denying visitation [is] moot in light of [a] trial court's final judgment terminating appellant's parental rights." *In re M.C.M.*, 57 S.W.3d 27, 37 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see Maudlin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

The same is true in this instance. Both of A.B.'s complaints on appeal involve temporary orders that were issued prior to the December 17, 2020, entry of the final order terminating his parental rights to B.B. As such, both of A.B.'s points of error are moot.

Accordingly, we overrule A.B.'s first and second points of error.

## III. Conclusion

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:     May 11, 2021
Date Decided:       June 8, 2021